IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                         Case No. 3:10cr261

TRACEY LAMONT ROBINSON,

     Defendant.

## MEMORANDUM OPINION

     This matter comes before the Court on Defendant Tracey Lamont Robinson's Motion for

Compassionate Release Pursuant to the First Step Act of 2018 (the "Motion"). (ECF No. 82.)

Robinson seeks compassionate release pursuant to the First Step Act because he is at high risk

for serious illness or death if he contracts COVID-19. (Mot. 1, ECF No. 82.) The United States

responded in opposition, (the "Opposition"), (Opp'n, ECF No. 84), and Robinson replied, (the

"Reply"), (Reply, ECF No. 85). The Motion is ripe for disposition. For the reasons articulated

below, the Court will grant the Motion, reduce Robinson's sentence to time served, and impose

an additional six months of supervised release to his previously imposed thirty-six month

supervised release term, for a total of forty-two months of supervised release.

### I. Background

     On September 21, 2010, Robinson and LaFonia Mason were indicted in a three-count

indictment. (Indictment, ECF No. 1.) Count One charged Robinson with possession with intent

to distribute heroin, in violation of 21 U.S.C. § 841, and Count Three charged Robinson with

maintaining a drug-involved premises, in violation of 21 U.S.C. § 856.[1] On December 9, 2010,

pursuant to a written plea agreement, Robinson pled guilty to Count One of the Indictment.

---

[1] Robinson was not charged with Count Two of the Indictment.

(Plea Agreement, ECF No. 34.) On January 11, 2011, United States District Judge James R. Spencer adopted the Report and Recommendation of Magistrate Judge Dennis W. Dohnal, finding Robinson guilty of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (ECF No. 39.)

The Presentence Report ("PSR") set forth the relevant conduct underlying Robinson's offense, as recounted in the Plea Agreement and Statement of Facts. (PSR ¶¶ 11–13.) Law enforcement officers stopped Robinson for a traffic violation, at which point he "consented to a search of the vehicle he was driving and of his person." (*Id.* ¶ 11.) Officers located 35.3 grams of heroin on Robinson's person. (*Id.*) At the time of arrest, Robinson had just left the apartment of Lafonia Mason, his codefendant. (*Id.* ¶ 12.) Detectives obtained a search warrant for Mason's residence. (*Id.*) In Mason's apartment, detectives located an "additional quantity of heroin, quantities of marijuana, a [twelve] ton hydraulic press used for packaging heroin, and . . . a Bersa .380 semiautomatic pistol from a safe located in the living room." (*Id.*) The probation officer applied a two-point firearm enhancement to Robinson's Offense Level because of the firearm located in the locked safe in Mason's apartment.[2] (*Id.* ¶ 13.)

The PSR designated Robinson as a career offender, based on two predicate drug offenses that he committed in Virginia. (*Id.* ¶ 40.) On April 15, 1993, at age nineteen, Robinson was convicted of Conspiracy to Distribute 50 Grams or More of Cocaine Base. (*Id.* ¶ 26.) On June 22, 2005, at age thirty-one, Robinson was convicted of Possession of Heroin with the Intent to Distribute. (*Id.* ¶ 29.)

The PSR set forth a Total Offense Level of 29 and Criminal History Category of VI, resulting in a Guidelines range of 151 to 188 months. (PSR 19.) The Court sentenced Robinson

---

[2] Robinson did not object to the two-point firearm enhancement. (PSR A-1.) LaFonia Mason served four months' imprisonment for her offenses. (J., ECF No. 58.)

to 151 months' imprisonment, at the low end of the Guidelines range, to be followed by a three-year term of supervised release. (Am. J. 2–3, ECF No. 62.)

In support of the Motion, Robinson argues that: (1) his hypertension places him at "high risk for serious illness or death should he contract COVID-19;" (2) he has taken meaningful steps toward rehabilitation while in prison and has prepared to reintegrate into society; and, (3) he has a stable release plan. (Mot. 15, 20–21). Robinson points out that his "BOP medical records show that his blood pressure has been in the hypertensive range throughout 2019 and 2020 (the two years for which BOP provided medical records), even while he has been on blood pressure medication." (*Id.* 15–16.) As of June 15, 2020, Robinson "has served over 90% of his sentence, and over 95% of the incarceration portion of his sentence." (Mot. 2.) The BOP has determined that Robinson, currently forty-six years old, may transfer to community- or home-confinement in less than five months, on December 3, 2020. (Mot. 2.) Robinson has a projected release date of June 3, 2021. BUREAU OF PRISONS, "Find an Inmate," https://www.bop.gov/inmateloc/ (last visited July 15, 2020).

## II. The COVID-19 Pandemic Has Led Inmates to Seek Compassionate Release from Prison to Avoid Serious Illness or Death

In March 2020, the World Health Organization declared COVID-19 a worldwide pandemic. WORLD HEALTH ORGANIZATION, "Timeline of WHO's response to COVID-19," https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last visited July 13, 2020). Following this declaration, individuals incarcerated within the Bureau of Prisons, including Robinson, began petitioning courts around the country for compassionate release under the First Step Act, citing individual risk factors as they relate to COVID-19. (Mot. 14.)

The Bureau of Prisons ("BOP") has "3,401 federal inmates and 280 BOP staff who have confirmed positive test results for COVID-19 nationwide." BUREAU OF PRISONS, "COVID-19

3

Cases," https://www.bop.gov/coronavirus/ (last visited July 16, 2020).  While 5,137 inmates and

603 staff members have recovered, ninety-four inmates and one staff member have died as a

result of COVID-19 disease.  *Id.*

Relevant to the Motion at bar, Robinson is serving his sentence at FCI Fort Dix, in

Burlington County, New Jersey.  (Mot. 2.)  According to the Bureau of Prisons, Fort Dix has five

inmates who have recently tested positive for COVID-19, thirty-five inmates who have

recovered, and five staff members who have recovered.  BUREAU OF PRISONS, "Covid-19 Cases,"

https://www.bop.gov/coronavirus/ (last visited July 16, 2020).  No inmates or staff at Fort Dix

have died from COVID-19.  *Id.*  Burlington County itself has 5,430 confirmed cases and 414

confirmed deaths.  *See* STATE OF NEW JERSEY, "COVID-19 Dashboard," https://covid19.nj.gov

(last visited July 16, 2020).

### III. Legal Standard:  Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to, *inter alia*, provide incarcerated

individuals the opportunity to directly petition the courts for compassionate release under 18

U.S.C. § 3582(c)(1)(A).[3]  Before Congress passed the First Step Act in 2018, only the Bureau of

---

[3] Section 3582(c)(1)(A) reads in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except
that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the defendant has fully exhausted all
administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the
defendant's behalf or the lapse of 30 days from the receipt of such a request by the
warden of the defendant's facility, whichever is earlier, may reduce the term of
imprisonment (and may impose a term of probation or supervised release with or without
conditions that does not exceed the unserved portion of the original term of
imprisonment), after considering the factors set forth in section 3553(a) to the extent that
they are applicable, if it finds that—

Prisons had the authority to petition courts for sentence modifications on compassionate release grounds. *United States v. Poulios*, No. 2:09cr109, 2020 WL 1922775, at *2. Following enactment of the First Step Act, criminal defendants may move courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), and evaluate any evidence of rehabilitation or other post-conviction mitigating conduct. *See United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

## A.   **Exhaustion of Administrative Remedies**

Before the Court may reach the merits of a defendant's motion, it must find either: (1) that the defendant has fully exhausted his or her administrative remedies; or, (2) waive that requirement. *United States v. Jones*, No. 3:11cr249-MHL, at 2, ECF No. 47 (citing *Washington v. Bureau of Prisons*, No. 1:19cv1066, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019)). Regarding exhaustion, the defendant may bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Regarding waiver, the court may waive the exhaustion requirement where pursuing an administrative remedy would be futile. *Jones*, No. 3:11cr249, at 2. The court may

---

(i–ii)  extraordinary and compelling reasons warrant such a reduction. . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. 3582(c)(1)(A).

also waive the exhaustion requirement if "exhaustion via the agency review process would result in inadequate relief" or "pursuit of agency review would subject the petitioner to undue prejudice." *Poulios*, 2020 WL 1922775, at *1.

**B.      Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, § 3582(c)(1)(A) permits a court to modify a defendant's sentence when "extraordinary and compelling reasons" warrant such action, after additional consideration of "the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable."[4] 18 U.S.C. § 3582(c)(1)(A); *see also White*, 2020 WL 3442171, at *4.

Prior to the passage of the First Step Act, the United States Sentencing Commission ("Sentencing Commission") defined "extraordinary and compelling reasons" in United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13.[5] *Porter-Eley v. United States*, No.

_____

[4] The highly discretionary process of adjudicating these motions sees courts varying widely in their application of the statutory language, even within the same district. *Compare United States v. White*, No. 3:18cr61, 2020 WL 3442171, at *3 (E.D. Va. June 23, 2020) (declining to waive the exhaustion of administrative remedies requirement) *with Poulios*, 2020 WL 1922775, at *3 (waiving the exhaustion requirement). Until the district courts receive "the inevitable interpretation of the terms of § 3582(c) by a higher court," the process will likely remain discretionary. *White*, 2020 WL 3442171, at *4.

[5] Section 1B1.13 of the United States Sentencing Guidelines provides in relevant part:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or (B) [T]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) [T]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

4:16cr89, 2020 WL 3803030, at \*2 (E.D. Va. July 6, 2020). The Sentencing Commission noted that extraordinary and compelling reasons exist under certain circumstances concerning the medical condition, age, and family circumstances of the defendant. U.S.S.G. § 1B1.13 cmt. 1 (U.S. SENTENCING COMM'N 2018). The Sentencing Commission also provided that there may be "extraordinary and compelling reason[s] other than, or in combination with," those reasons specifically listed therein. *Id.* Since the passage of the First Step Act, however, the Sentencing Commission has not updated Guidelines Manual § 1B1.13. In any event, the policies contained in § 1B1.13, while helpful guidance, do not bind the Court when considering a sentence reduction consistent with the statutory mandates of 18 U.S.C. § 3582(c)(1)(A). *Porter-Eley*, 2020 WL 3803030, at \*2.

In the context of COVID-19, courts nationwide have recognized that "where a defendant can show both a particularized susceptibility and a particularized risk of contracting the coronavirus, they may grant motions for compassionate release based upon a defendant's medical conditions." *White*, 2020 WL 3442171, at \*4; *see also United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at \*7 (E.D. Va. April 10, 2020). Generally, courts have found that the defendant cannot rely merely on "a fear of contracting COVID-19" as grounds for compassionate release. *White*, 2020 WL 3442171, at \*5.

---

(3) [T]he reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

## IV. Analysis

**A.      Robinson Has Fulfilled The Exhaustion Requirement Because Thirty Days Have Lapsed Since The Warden's Receipt of His Request For Compassionate Release and the Warden Has Not Responded**

First, the Court finds that Robinson has sufficiently exhausted his administrative remedies. On March 31, 2020, and June 3, 2020, Robinson submitted his requests for compassionate release to the Warden of FCI Fort Dix. (Mot., Ex. 2–3.) While Robinson has not fully appealed the Warden's denial of his June 3, 2020 request, any further delay would result in prejudice to Robinson.[6] After considering the exhaustion of his administrative remedies, the Court turns to the merits of the Motion.

Robinson has a projected release date of June 3, 2021, but "he is eligible to go to community- or home-confinement for the final portion of his sentence, and is scheduled to do so on or about December 3, 2020." (*Id.* 2.) In 1993, Robinson received a diagnosis for hypertension, (PSR ¶ 57), which he argues "plac[es] him at elevated risk of severe complications or death should he contract COVID-19, which is prevalent at FCI Fort Dix," (Mot. 1).

---

[6] The record shows that Robinson submitted an initial request for compassionate release on March 31, 2020, (Mot. 9, Ex. 3), to which the BOP responded, directing him to check a box and "re-submit [his] request with . . . one specific category" for the BOP's assessment, (*id*). On June 3, 2020, Robinson submitted a second request with the aid of a Federal Public Defender. (Mot., Ex. 2.) The United States notes in its Response that, on June 15, 2020, the Warden denied Robinson's second request for compassionate release. (Resp. 10.) That same day Robinson filed his Motion in this Court. The record before the Court does not illuminate whether Robinson has since appealed the June 15, 2020 decision from the Warden.

As the United States has stated in other cases in this district, "an inmate need not 'exhaust' administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden. If the ***BOP rejects the request*** or takes no action within the 30 day window, the inmate is then free to press his position in the appropriate federal court." *United States v. Smith*, No. 2:18cr96, ECF No. 37 at 12, n.5. (E.D. Va. Apr. 17, 2020) (emphasis added). In any event, the Court finds that further delay would result in prejudice to Robinson, given the circumstances present in this case.

**B.    Robinson Presents Extraordinary and Compelling Reasons Justifying Compassionate Release**

In the instant motion, Robinson argues that his high risk of serious illness, were he to contract COVID-19, meets the standard for extraordinary and compelling reasons and justifies compassionate release. (*Id.* 16.) The Court finds that the circumstances present in this case together with the COVID-19 pandemic constitute extraordinary and compelling reasons to render Robinson eligible for compassionate release.

Here, Robinson has long suffered from hypertension. (*Id.*) While the "relationship between hypertension and severe illness from COVID-19 is one battleground in this unsettled and rapidly evolving area of scientific research," it is undisputed that "hypertension is one of the most common 'comorbidities' in people who experience severe cases of COVID-19." *United States v. Salvagno*, No. 5:02cr51, 2020 WL 3410601, at *12 (N.D.N.Y. June 22, 2020). In *Salvagno*, after the Court granted the defendant's motion for compassionate release, *id.* at *1, the United States filed a motion for reconsideration, *id.* at *7. In its denial of the government's motion for reconsideration, the Court thoroughly evaluated the relationship between hypertension as a risk factor and COVID-19. *Id.* at *12–17. The Court found that while "the unsettled nature of the science surrounding risk factors" of COVID-19 make the establishment of "hypertension as a cause of severe illness from COVID-19" a difficult task, *id.* at *13 (emphasis omitted), "several peer-reviewed scientific studies and research commentaries in reputable scientific journals conclude that hypertension is independently associated with severe manifestations of COVID-19, controlling for the confounding variables of age and other health conditions," *id.* at *15 (citing Gao, et al., *Association of Hypertension and Antihypertensive Treatment with COVID-19 Mortality: A Retrospective Observational Study*, EUR. HEART J.

9

(June 5, 2020); Zhang, et al., *Associations of Hypertension with the Severity and Fatality of SARS-CoV-2 Infection: A Meta-analysis*, EPIDEMIOLOGY AND INFECTION (May 28, 2020)).

In opposition to the Motion, the United States argues that Robinson's hypertension does not constitute a sufficient risk for severe illness from COVID-19 that justifies compassionate release. (Opp'n, 14.) "[W]hile [Robinson] has hypertension, it is controlled and [he] is able to perform activities of daily living and self-maintenance." (*Id.* 10.) The scientific authorities, recognizing the high comorbidity relationship between hypertension and COVID-19, however, "indicate an association between 'hypertension' broadly, and severe illness and death from COVID-19," not an association that varies in risk based on the severity of the defendant's hypertension. *Salvagno*, 2020 WL 3410601, at *16. Moreover, the United States does not present scientific evidence describing such a variable relationship, leaving the Court with an unsupported assertion.

The United States further argues that Robinson's release to Chesterfield County, Virginia would not decrease his risk of contracting the virus. (Opp'n, 14.) For instance, the United States avers that in FCI Fort Dix, "there have been a total of [forty-four] cases of COVID-19 . . . and no deaths," while in Chesterfield County, "there are 3,059 confirmed cases of COVID-19 with [fifty-six] deaths." (*Id.*) Robinson rebuts this argument in his Reply, observing that "the total number of coronavirus cases at FCI Fort Dix, as a percentage of the population, is [sixty-three percent] higher than the total number in Chesterfield County." (Reply, 2; *id.* n.1.) Robinson further argues that the BOP's positivity rate of twenty-nine percent supports the argument that "the COVID-19 outbreak within BOP is likely far worse than the number of confirmed cases reveals, because a high positivity rate indicates that an entity 'is only testing the sickest patients who seek medical attention, and is not casting a wide enough net to know how much of the virus

10

is spreading.'" (*Id.* 5 (quoting JOHNS HOPKINS CORONAVIRUS RSCH CTR., *Which U.S. States*

*Meet WHO Recommended Testing Criteria?*, https://coronavirus.jhu.edu/testing/testing-positivity

(last updated July 14, 2020) (last visited July 14, 2020)).)

For the purpose of evaluating the instant motion, the Court finds that Robinson

adequately presents extraordinary and compelling reasons for compassionate release, because his

hypertension, combined with the conditions at FCI Fort Dix, creates an increased risk that he will

contract the virus and experience severe illness as a result.

### C. Evaluating the Factors Set Forth in 18 U.S.C. § 3553(a) and Postconviction Conduct Supports Granting the Motion and Imposing a Sentence of Time Served

Next, the Court turns to the relevant sentencing factors for its analysis of the Motion at

Bar. Section 3582(c)(1)(A) requires that, in addition to finding extraordinary and compelling

reasons for release, the Court must evaluate the sentencing factors set forth in 18 U.S.C.

§ 3553(a).[7] In doing so, the Court finds that a sentence of time served, followed by a forty-two-

month term of supervised release, results in a sufficient, but not greater than necessary, sentence.

---

[7] Section 3553(a) provides, in the relevant subsections, that

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available; . . .

18 U.S.C. § 3553(a).

First, the record reflects that Robinson has demonstrated significant rehabilitation since the imposition of his sentence in 2011. (Mot. 20.) Robinson's completion of the BOP's Residential Drug Abuse Program ("RDAP") and his continued investment "in both his and his peers' treatment,' despite having completed the residential portion of the program nearly a year ago," evinces "[Robinson's] ability to successfully reintegrate into society." (*Id.*) The RDAP Program Coordinator, Dr. D. Curry, commended Robinson on his progress, writing that he successfully completed "the Bureau of Prisons' most intensive substance abuse treatment program[]," earning "the confidence of staff and his peers." (*Id.* Ex. 1, 1.) Dr. Curry noted that "[a]s a result of his demonstrated leadership within the community, Mr. Robinson was asked to serve in the role of Mentor and Big Brother to his junior peers. Now, as a senior member of the community, Mr. Robinson continues to maintain visibility, and remains invested in both his and his peers' treatment." (*Id.* 2.)

The United States argues that Robinson "has proved that court orders and institutional rules are insufficient to deter him from committing serious crimes," referring to Robinson's two violations of supervised release in 2005 and 2010 through the commission of the instant offense. (Opp'n, 15.) In reply, Robinson avers that "the government cites evidence from more than [ten] years ago," and that such evidence "is contradicted by much more recent evidence regarding Mr [sic] Robinson's rehabilitation." (Reply 6.) Robinson also argues that the "well-known correlation between aging and reduced recidivism risk" supports granting the instant motion. (*Id.*) The Court finds Robinson's evidence of rehabilitation weighs in favor of granting relief.[8]

---

[8] Robinson's age, forty-six, indicates a decreased recidivism risk. Additionally, Robinson's supervised release term, which the Court increases by six months, will ensure that he remains on supervised release until he reaches the age of 50.

Second, Robinson proposes an adequate release plan. (Mot. 21.) Upon release, Robinson will reside with his non-codefendant fiancé at her home in North Chesterfield, Virginia.[9] (*Id.*) His release to "a stable home" with "transportation home from prison, family support, and transportation as needed to get to appointments with probation, medical care, or employment" indicates a commitment to reintegration to society. (*Id.*) This release plan further supports granting relief.

Third, Robinson has served the overwhelming majority of his sentence. Robinson has been incarcerated since his arrest in October 2010. District courts within the jurisdiction of the Fourth Circuit have considered the length of time served an important factor when ruling on motions for compassionate release during the COVID-19 pandemic. *See e.g.*, *United States v. Johnson*, No. 2020 WL 3316221, at *1 (D. Md. June 17, 2020) (granting compassionate release to a defendant "sentenced to a period of 102 months' imprisonment" who has a "current projected release date [of] October 2, 2020"); *United States v. Bright*, 2020 WL 2537508, at *2 (W.D. Va. May 19, 2020) (granting compassionate release to a defendant who "has served over 75 percent of his 84-month sentence"). For instance, in *United States v. Collins*, the district court, in granting compassionate release, acknowledged that doing so resulted in only a "relatively modest reduction" because the defendant "would be eligible for release from BOP custody in December 2020." 2020 WL 1506176, at *1–2 (D. Md. Mar. 30, 2020). Likewise, this Court notes the importance of the amount of time Robinson has already served. Robinson's decade of confinement reflects the seriousness of his offense, affords adequate deterrence for criminal conduct, and provides just punishment for his drug crime.

---

[9] Robinson also obtained his GED while previously incarcerated, providing him further skills to reintegrate into society. (PSR ¶68.)

13

Additionally, the Court recognizes the two-point firearm enhancement present in the PSR when considering the § 3553(a) factors. While the firearm was not on Robinson's person at the time of arrest, the existence of the firearm during the commission of Robinson's underlying offense calls for an additional six months of supervised release. *See United States v. Pena*, No. 16-10236-MLW, 2020 WL 2798259, at *10 (D. Mass. May 29, 2020) (granting compassionate release and increasing supervised release from two to three years); *United States v. Calabrese*, No. 16-30033-TSH, 2020 WL 3316139, at *2 (D. Mass. June 18, 2020) (granting compassionate release and increasing supervised release from twenty-three months to twenty-nine months). The six-month increase in his supervised release term will also serve to protect the public and deter Robinson from further criminal conduct. Finally, six additional months of supervised release will provide the Court with, as Robinson proposes, the ability "to closely monitor his adjustment to release and penalize him, including through re-incarceration, should he violate the conditions of release." (Mot. 21–22.)

### III.  Conclusion

In sum, after considering the § 3553(a) factors that the Court must assess when reaching the appropriate sentence, including any post-conviction mitigating conduct and aggravating conduct, the Court finds compassionate release appropriate. The Court will grant the Motion.

An appropriate Order shall issue.

/s/

_____
M. Hannah Lauck
United States District Judge

Date: July 17, 2020
Richmond, Virginia

14